Filed 2/26/14  Chularee v. The Cookson Co. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PARADEE CHULAREE et al., | B242764 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC113062) |
| v. | |
| THE COOKSON COMPANY, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge.  Affirmed.

The Homampour Law Firm and Arash Homampour for Plaintiffs and Appellants.

Horvitz & Levy, Daniel J. Gonzalez, Stephen E. Norris; Bragg & Kuluva and Sherry L. Grguric for Defendant and Respondent.

In this personal injury action brought on theories of negligence and strict liability for a defective product, plaintiffs Paradee Chularee and her husband Jim Good appeal from a judgment entered in favor of defendant The Cookson Company, Inc. (TCCI) after the trial court granted summary judgment. TCCI purchased the manufacturing assets of The Cookson Company (Cookson), the manufacturer of the rolling door that severely injured Chularee. The general rule is that a purchaser of assets of another company does not assume the selling company's debts and liabilities. (*Ray v. Alad Corp.* (1977) 19 Cal.3d 22.) There are limited exceptions to this rule. (*Id*. at pp. 28, 30-34.) This appeal addresses TCCI's burden on summary judgment, and whether a triable issue of fact exists as to any of the exceptions. We conclude that TCCI met its burden on summary judgment and no triable issue of fact exists to hold the company liable under any exception to successor nonliability. We further conclude on this record that TCCI owed no independent duty to Chularee or her husband. Accordingly, we affirm.

FACTS

On March 17, 2011, Chularee suffered severe injuries, including intracranial hemorrhage resulting in traumatic brain injury, when she was struck on the head by a rolling door. Cookson manufactured and shipped the rolling door for installation before TCCI purchased Cookson's assets.

1. *TCCI Purchases Cookson's Assets*

In May 2008, Cookson entered into an Asset Purchase Agreement (Agreement) with an entity that ultimately changed its name to TCCI. Pursuant to the Agreement, the predecessor to TCCI acquired Cookson's manufacturing assets, and Cookson retained all liability, including any liability for products manufactured before the Agreement, with the exception of certain warranty claims not at issue here.

2. *Cookson Changed its Name to Coboys*

By the terms of the Agreement, Cookson could no longer operate under its current name. Cookson changed its name to Coboys, Inc., which became "Coboys Transition, Inc." Coboys, LLC (Coboys) became the successor company. Pursuant to an assignment

2

and assumption agreement entered into in December 2008, Coboys' predecessor assumed Cookson's retained liabilities.

Coboys has a valid products/completed operations liability policy issued by Lexington Insurance Company. The $11 million liability policy, in effect from May 2008 through May 2013, covers claims arising out of Cookson's products manufactured before the date of the Agreement.

PROCEDURAL BACKGROUND

1. *Personal Injury Action*

The first amended complaint (complaint) names a number of defendants, including TCCI and Coboys. The form complaint asserts causes of action for negligence, products liability, and loss of consortium. The negligence cause of action alleges defendants, including TCCI, "negligently and carelessly erected, designed, manufactured, fabricated, installed, repaired, inspected, serviced and/or assembled a defective rolling door" at 410 Westwood Plaza, 3040, Los Angeles, California, and the rolling door subsequently "fell on Plaintiff Paradee Chularee causing substantial injuries, including but not limited to a brain hemorrhage and stroke." The products liability cause of action repeats the same factual recitations, asserting counts for strict liability, negligence, and breach of warranty.

Without any factual assertions, the form complaint further alleges: "Each of the defendants knew the product would be purchased and used without inspection for defects. The product was defective when it left the control of each defendant. The product at the time of injury was being [¶] . . . [¶] used in a manner that was reasonably foreseeable by defendants as involving a substantial danger not readily apparent. Adequate warnings of the danger were not given."

The complaint did not allege any basis to hold TCCI liable as a successor in interest to Cookson. In its answer, TCCI asserted as a defense that it "is not the manufacturer, designer, seller, or distributor of any product or instrumentality alleged to have been involved in Plaintiffs' alleged injuries or damages, and is not, by operation of

3

law and fact, the successor in interest to such manufacturer, designer, seller, or distributor."

  2. *Summary Judgment Motion*

  TCCI moved for summary judgment on its affirmative defense that (1) it did not manufacture, distribute, or sell the rolling door that injured plaintiffs, and (2) it had no successor liability because the "actual successor is a party to this action." Anticipating that the plaintiffs might oppose the summary judgment motion by invoking the product-line exception established in *Ray v. Alad Corp.*, *supra*, 19 Cal.3d 22, TCCI showed that Coboys is an ongoing concern, Coboys assumed Cookson's retained liabilities, and Coboys had an $11 million insurance policy to cover claims arising out of Cookson's products manufactured before the date of the Agreement.[1]

  In opposition to the summary judgment motion, plaintiffs argued that the motion should be denied because TCCI did not meet its burden to show successor nonliability under the product-line exception. In its memorandum of points and authorities, plaintiffs also asserted another exception to successor nonliability, that is, TCCI was the mere continuation of Cookson, and TCCI was "indistinguishable" from Cookson. In addition, the plaintiffs contended there was a triable issue of fact as to TCCI's failure to perform aftermarket safety analysis and warnings.

  Plaintiffs presented evidence to show Coboys's $11 million insurance policy was inadequate to cover the expected damages award, which was estimated at $30 million.

  Plaintiffs also presented evidence that TCCI acquired Cookson's manufacturing plants, its executive offices, and its customer lists. TCCI also continued to manufacture

---

[1]  We consider all of the evidence set forth in the papers, except that to which objections have been made and sustained. (Code Civ. Proc., § 437c, subd. (c).) Although both parties filed objections to the evidence, the trial court did not rule on the objections. Therefore, we presume the objections were overruled. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) Presumptively overruled objections can be raised on appeal, with the burden on the objector to renew the objections. (*Ibid.*) Neither party has renewed objections in this court.

the same products, using the same equipment and employing the same personnel and executives.

The trial court granted the summary judgment motion, concluding TCCI established it did not manufacture the rolling door that injured Chularee, and the product-line exception did not apply as a matter of law. The trial court entered judgment in favor of TCCI, and this timely appeal followed.

3. *The Parties' Burdens on Summary Judgment*

In their opening brief on appeal, appellants relied on *Fisher v. Allis-Chalmers Corp.* (2002) 95 Cal.App.4th 1182, 1188 (*Fisher*), to argue for the first time that TCCI had the burden to show it was not Cookson's successor, and to show it had no successor liability by establishing that all five exceptions to the general rule did not apply. At oral argument, appellants' counsel argued the exceptions to successor nonliability were similar to affirmative defenses, and TCCI had the burden to prove none of the five exceptions applied. Because this issue had not been fully briefed by both parties, we sought supplemental briefs to address the parties' respective burdens on summary judgment.

In the supplemental letter brief, appellants cited TCCI's affirmative defense that it did not manufacture the door that caused the injuries and it was not Cookson's successor, arguing TCCI had the burden to establish this defense by disproving an element of all five exceptions to successor nonliability or showing one element of each exception cannot be established to prevail on summary judgment. We address the issue of the parties' burdens on summary judgment before addressing the merits of this appeal.

DISCUSSION

1. *Summary Judgment Principles and the Parties' Burdens*

We review an order granting summary judgment de novo, considering all the evidence submitted in support of and in opposition to the motion, except evidence to which an objection has been made and sustained by the court, and all uncontradicted inferences reasonably deducible from the evidence. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) A motion for summary judgment is properly granted when there

5

are no triable issues of material fact and so the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  TCCI, as the moving party, carries the ultimate burden of persuasion that one or more elements of a cause of action cannot be established or there is a complete defense thereto.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*); Code Civ. Proc., § 437c, subds. (*o*) & (p)(2).)

On appeal from a judgment entered after the grant of summary judgment, we follow the same three-step analysis that the trial court applies.  (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 939-940.)  First, we identify the issues framed by the pleadings.  Second, we determine whether the moving party has established facts justifying judgment in its favor as a matter of law.  Third, if the moving party has carried its initial burden, we determine whether the opposing party has demonstrated the existence of a triable issue of fact that is material to the cause of action.  (*Ibid*.)  A triable issue of material fact exists if the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.  (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

TCCI's motion was based on the affirmative defense that it was not liable because it did not manufacture, distribute, or sell the rolling door that injured plaintiffs, and it was not the successor in interest to Cookson, the manufacturer of the rolling door.  TCCI, therefore had the initial burden to produce evidence sufficient to support each element of that defense.  (*Bacon v. Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 858.)  To meet this burden, TCCI had to show that undisputed facts support its defense.  Once it did so, the burden shifted to plaintiffs to show an issue of fact concerning at least one element of that defense.  (Code Civ. Proc., § 437c (*o*)(2).)  "If, in anticipation of an affirmative defense, the complaint alleges facts to refute it, the pleadings themselves create 'a material issue which defendant[] would have . . . to refute in order to obtain summary [judgment].' [Citation.]" (*Bacon*, *supra*, at p. 858.)  In the absence of such allegations, the plaintiffs could avoid summary judgment only by presenting evidence sufficient to raise a triable issue concerning TCCI's defense.  (*Ibid*.)

6

## 2. *General Rule of Successor Nonliability and Exceptions to the Rule*

As previously noted, the general rule is a company that purchases the principal assets of another company does not assume the seller's liabilities. (*Ray v. Alad Corp.*, *supra*, 19 Cal.3d at p. 28.) There are exceptions to this general rule if "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." (*Ibid*.) In *Ray v. Alad Corp.*, the California Supreme Court established a fifth exception in strict products liability cases, referred to as the product-line exception. (*Id*. at pp. 30-34.)

Relying on *Fisher*, *supra*, 95 Cal.App.4th 1182, appellants contend that to prevail on summary judgment, TCCI had the burden to establish successor nonliability by eliminating at least one element of all five exceptions to the general rule, even though successor liability had not been alleged in the complaint. *Fisher* focused on one exception to successor liability. The dispositive issue was whether, pursuant to the asset transfer agreement, the moving party (Siemens) agreed to assume some of the product liability claims of its predecessor, thereby falling within the first exception to the general rule of successor nonliability. (*Id*. at pp. 1188-1193.)

After setting forth the five exceptions to the general rule of successor nonliability, the *Fisher* court stated: "To establish that it is entitled to summary judgment, Siemens must show the exceptions that create successor liability do not apply in this case." (*Fisher, supra,* 95 Cal.App.4th at p. 1188.) Appellants rely on this statement to support their argument that TCCI had the initial burden to disprove an element of all five exceptions that create successor liability. The *Fisher* court did not discuss the parties' respective burdens on summary judgment. Moreover, the partially published *Fisher* case does not recite the allegations in the operative complaint, which frame the issues on

7

summary judgment.[2]  The *Fisher* court's reference is case specific, thus we assume in the unpublished portion of that opinion that facts had been alleged to show Siemens was the successor in interest, and the company fell within the exceptions to the general rule of successor nonliability.  If alleged, Siemens would have had the initial burden on summary judgment to disprove an element of the exceptions in that case.

If the opposing party raised exceptions to the general rule of successor nonliability in opposition to the motion for summary judgment, and not in the complaint, Siemens would still only be entitled to summary judgment if it established that one element of the exceptions in that case could not be established as a matter of law.  Stated another way, as the moving party, whether the exceptions were raised in the pleadings or in opposition, Siemens had to establish no triable issue of fact existed as to successor liability to prevail on its summary judgment motion.[3]

3. *TCCI Met its Initial Burden to Establish an Affirmative Defense*

TCCI carried its burden that it did not manufacture the rolling door and could not be liable for plaintiffs' injuries.  Cookson, not TCCI, manufactured the rolling door.  TCCI also satisfied its burden on summary judgment that it was not Cookson's successor, presenting the Agreement and other evidence that Coboys was Cookson's successor.  As an asset purchaser, TCCI fell within the general rule of successor nonliability.

Because the complaint did not allege facts that TCCI was liable as a successor to Cookson, it was incumbent on the plaintiffs to dispute the evidence presented that TCCI was not Cookson's successor and to present evidence to show that there was a triable issue of fact to hold TCCI liable as a successor to Cookson.  This is a simple corollary to

---

[2]  The fifth exception enunciated in *Ray v. Alad Corp.*, *supra*, 19 Cal.3d 22, only applies to strict products liability claims.  A successor would not have the initial burden to disprove an element of this exception if this legal theory of liability was not alleged.

[3]  Appellants also cite to *Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218.  That case is inapposite.  The summary judgment motion did not address or negate successor liability.  (*Id*. at p. 1236.)  Thus, there was no discussion of the parties' burdens on a summary judgment motion.

the rule that the materiality of a disputed fact is measured by the pleadings, which " 'set the boundaries of the issues to be resolved at summary judgment.' " (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.)

4. *No Triable Issue of Fact Exists to Establish Successor Liability*

Appellants opposed the summary judgment motion by asserting there was a triable issue of fact as to successor liability by responding to the evidence presented regarding the product-line exception, and by presenting evidence to establish a triable issue of fact as to the mere-continuation exception.[4] Thus, for TCCI to prevail on summary judgment, as stated in *Fisher*, the undisputed evidence must establish that one element of the exceptions in this case cannot be established. (*Fisher*, *supra*, 95 Cal.App.4th at p. 1188.)

a. *The First Element of the Product-Line Exception Cannot be Established*

The product-line exception requires: "(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business." (*Ray v. Alad Corp.*, *supra*, 19 Cal.3d at p. 31; see also *Franklin v. USX Corp., supra,* 87 Cal.App.4th at pp. 628-629.)

The first element of the product-line exception is satisfied only if the plaintiff lacks a remedy against the predecessor, and the asset sale contributed to the destruction of the plaintiff's remedies. (*Ray v. Alad Corp.*, *supra*, 19 Cal.3d at p. 31.) The required causation is lacking here.

---

[4] Appellants appear to argue that the merger exception also applies. This argument was not raised in the trial court and is forfeited. (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 171.) In any event, at least one court has reasoned that the "mere continuation theory swallows up the de facto merger theory, because once the two mere continuation elements are satisfied there is no need to further consider the additional elements of the de facto merger theory in establishing successor liability." (*Franklin v. USX Corp.* (2001) 87 Cal.App.4th 615, 625, fn. 6.)

The undisputed evidence establishes the (1) Agreement contained a provision that Cookson retained "any liability arising out of or relating to products of Seller to the extent manufactured or sold" prior to execution; (2) Coboys, as successor to Cookson, assumed Cookson's liabilities;[5] and (3) Coboys has a valid products/completed operations liability policy to cover potential product liability claims relating to products manufactured before the date of the Agreement.

Although Coboys also is a defendant in this action, appellants argue the $11 million insurance policy that covers this claim is similar to a virtual destruction of their remedy because they anticipate an award of "$30 million in special and general damages." They caution this court to resist adopting the view that the product-line exception only applies to a "*Ray* clone." In support of this argument, appellants cite *Rosales v. Thermex-Thermatron, Inc*. (1998) 67 Cal.App.4th 187, *Kaminski v. Western MacArthur Co.* (1985) 175 Cal.App.3d 445, and *Rawlings v. D. M. Oliver, Inc.* (1979) 97 Cal.App.3d 890, all cases invoking the product-line exception in different factual circumstances than those present in *Ray v. Alad Corp.*, *supra*, 19 Cal.3d 22. These cases all have what is not present here, that is, post-sale the plaintiff had *no remedy* against the predecessor, not what may be considered to be an unsatisfactory remedy.

In *Rosales v. Thermex-Thermatron, Inc.*, *supra*, 67 Cal.App.4th 187, the predecessor did not receive any money for the sale of its business, as the payment went directly to a separate entity that was owed money. (*Id*. at pp. 194-195.) After the sale, the predecessor had no assets to satisfy its obligations. (*Id*. at p. 195.)

In *Kaminski v. Western MacArthur Co.*, *supra*, 175 Cal.App.3d 445, the successor obtained financial and managerial control over the financially strapped predecessor, thereby engineering a takeover of the assets and goodwill. (*Id*. at pp. 451-453, 458.)

---

[5] Throughout their briefs, appellants assert that their remedies against "the original manufacturer [Cookson] were destroyed as [Cookson] was dissolved subsequent to the May 2008 Asset Purchase Agreement." Cookson dissolved after it assigned all of its remaining assets and liabilities, including the consideration from the sale of its assets, to Coboys. Coboys is an ongoing entity.

10

This takeover "substantially contributed to the absence of [the predecessor] from the recovery pool of product liability plaintiffs," and the destruction of the remedies against the predecessor. (*Id.* at p. 458.)

In *Rawlings v. D. M. Oliver, Inc.*, *supra*, 97 Cal.App.3d 890, the successor formed a corporation to continue the business of manufacturing custom-made products at the same location under the same fictitious name as its predecessor. (*Id.* at pp. 898, 901.) The same barriers to plaintiff's recovery that were present in *Ray v. Alad Corp.* existed in this case. (*Rawlings v. D. M. Oliver, Inc.*, at p. 900.)

Unlike the cited cases, here a remedy exists against Cookson because Coboys remains a viable entity that has assumed Cookson's liabilities. Thus, the undisputed facts establish that there has been no "virtual destruction" of the plaintiffs' remedy, which is an essential element of this exception.

### b. *The Mere-Continuation Exception Cannot be Established Based Solely on Overlapping Officers and Directors*

Appellants also argue that TCCI is a mere continuation of Cookson, the rolling door manufacturer. "[A] corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts . . . only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations." (*Ray v. Alad Corp.*, *supra*, 19 Cal.3d at p. 29.)

The evidence showed four former officers/shareholders of Cookson are or were at some point officers of TCCI.[6] This is insufficient, however, to establish a triable issue of fact on the mere-continuation exception. As the California Supreme Court further

---

[6] Adequacy of consideration was not at issue in the trial court proceedings, nor do appellants contend this element is at issue on appeal. Issues not raised in the trial court that could theoretically create a triable issue of material fact may not be raised on appeal. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.) This issue also was not raised in the opening brief and is forfeited. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761 & fn. 4.)

11

explained in *Beatrice Co. v. State Bd. of Equalization* (1993) 6 Cal.4th 767, "even when the same persons are officers or directors of the two corporations, liability is not imposed on the acquiring corporation when recourse to the debtor corporation is available and the two corporations have separate identities." (*Id*. at p. 778; *CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1120-1121.)

Relying on the dissolution of Cookson after execution of the Agreement, appellants argue that three years after the sale of manufacturing assets to TCCI, there is no recourse against Cookson. But, the relevant inquiry is whether the assets were available to meet a creditor's claim at the time of the dissolution of the predecessor following the sale. (*Franklin v. USX Corp.*, *supra*, 87 Cal.App.4th at p. 627 & fn. 7.) Here, the undisputed facts establish that Cookson, and through its successor Coboys, had at the time of the sale, and continues to have resources, including insurance coverage, to give plaintiffs' recourse for their injuries. Moreover, the undisputed evidence establishes that Cookson's successor, Coboys, and TCCI are separate entities. Coboys, as successor to Cookson, still exists and remains answerable for Cookson's retained liabilities. Thus, an element of the mere-continuation exception (and de facto merger exception, see footnote 4, *ante*) cannot be established.

Moreover, even if TCCI had to show no triable issues of fact existed as to all five exceptions, TCCI has met that burden. The undisputed evidence shows that TCCI did not assume liability arising from rolling doors that Cookson manufactured before its acquisition, which defeats the first exception. There is no suggestion that the sale to TCCI was a fraud on the creditors. The Agreement was entered into in 2008, three years before the incident, from which the reasonable inference can be drawn that the asset sale was not intended to avoid any obligation owed to the plaintiffs. Accordingly, TCCI established as a matter of law it has no successor liability in this case.

5. *TCCI Owed No Independent Duty to Warn*

Citing *Gee v. Tenneco, Inc.* (9th Cir. 1980) 615 F.2d 857, appellants contend that TCCI owed an independent duty to warn users of defects in the rolling doors

12

manufactured by Cookson.[7] (*Id.* at pp. 865-866.) Appellants assert that TCCI was not entitled to summary judgment because it failed to raise this issue in its motion. We disagree on procedural and substantive grounds.

First, the form complaint does not allege any facts to support this theory of liability. (See *Gee v. Tenneco, Inc., supra*, 615 F.2d at p. 866.) As noted, TCCI was not required to raise an issue in its motion for summary judgment that had not been adequately alleged. (*Conroy v. Regents of University of California*, *supra*, 45 Cal.4th at p. 1250.)

Second, California has not adopted an independent duty of a successor to warn of defects in products manufactured by a predecessor. (*Burroughs v. Precision Airmotive Corp.*, *supra*, 78 Cal.App.4th at p. 698.) Even if such a theory were recognized, it is not warranted here based on the noted deficiencies in the pleadings and the record.

Therefore, TCCI cannot be held liable under any theory that Chularee alleges in the complaint. Because a loss of consortium claim is dependent on Chularee's negligence claim, TCCI cannot be held liable. (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1060, fn. 4.) Accordingly, summary judgment was properly granted.

---

[7] The cases addressing this theory refer to a continuation of the relationship between the successor and the predecessor's customers, which is not alleged here. (See *Burroughs v. Precision Airmotive Corp.* (2000) 78 Cal.App.4th 681, 696.) "Factors which may be considered in order to determine if a nexus or relationship sufficient to create a duty to warn exists are whether the successor assumed the predecessor's service contracts, whether the particular product was covered under a service contract with the predecessor's customer, whether the successor actually serviced the product, and whether the successor knew of the alleged defects and knew how to reach the predecessor's customers. [Citation.]" (*Ibid*.) While appellants argue that TCCI assumed "servicing of warranties," this is not alleged in the complaint or supported by any evidence submitted to oppose the summary judgment motion.

DISPOSITION

The judgment is affirmed.  TCCI shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

CROSKEY, Acting P. J.

KITCHING, J.

14